

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-8-2008

# TSG Inc v. US EPA

Precedential or Non-Precedential: Precedential

Docket No. 07-1116

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"TSG Inc v. US EPA" (2008). *2008 Decisions.* Paper 591.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/591

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-1116

———

TSG INCORPORATED,

Petitioner

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

Respondent

———

On Petition for Review from an
Applicability Determination of the
United States Environmental Protection Agency

———

Argued April 17, 2008

Before: SCIRICA, *Chief Judge*,
AMBRO and FISHER, *Circuit Judges*.

(Filed: August 8, 2008)

Bart E. Cassidy (Argued)
Katherine L. Vaccaro
Manko, Gold, Katcher & Fox
401 City Avenue, Suite 500
Bala Cynwyd, PA  19004
        *Attorneys for Petitioner*

David Gunter (Argued)
Thomas A. Lorenzen
United States Department of Justice
Environmental Defense Section
P.O. Box 23986
Washington, DC  20026-3986
        *Attorneys for Respondent*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

TSG, Inc. ("TSG") filed this petition to challenge the validity of the Environmental Protection Agency's ("EPA") Applicability Determination, which found that TSG was a fabric "finishing operation" under Subpart OOOO of the National Emission Standards for Hazardous Air Pollutants ("NESHAP"). TSG argues that its fabric treating process should not be required to abide by the finishing operation standards and should instead qualify as a coating operation under the regulations.  For the reasons that follow, we conclude that the EPA did not

2

clearly err when it classified TSG as a finishing operation. Therefore, we will deny the petition for review and uphold the EPA's determination.

## I. BACKGROUND

Petitioner TSG is a "commission fabric coater" with facilities in Pennsylvania and North Carolina. It receives fabrics from other entities, including "jobbers, importers, and interior decorators," and treats these fabrics to enhance qualities such as "water repellancy, stain resistance, and fire repellancy" and to meet other such specifications or requirements. TSG claims its process and business model can be contrasted with that used by large, vertically integrated mills, which typically apply "aqueous-based stain repellant coatings." Such large mills are able to use this method because of their familiarity with their fabric, as the aqueous-based method can potentially harm some fabrics. Because TSG deals with a variety of non-uniform and unfamiliar fabrics, it uses a solvent-based process.

In TSG's process, stain-repellant chemicals are diluted in a solvent, trichloroethene ("TCE"), which is then sprayed onto the fabric as it passes through the spraying machinery. This method allows TSG to process many different fabric weights, widths, colors, and constructions, as the solvent is generally gentler on a wider variety of fabrics than is a water-based system. As TSG characterizes it, the solvent acts as a "carrier" for the stain-repellant chemicals as they are sprayed onto the fabric and then evaporates when the fabric passes through the heating and drying machinery. A solvent recovery system then captures the evaporated solvent for reuse.

3

Congress enacted the Clean Air Act ("CAA") "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). Under the CAA, the administrator of the EPA ("Administrator") "shall promulgate regulations establishing emissions standards" for each category of sources of "hazardous air pollutants" ("HAP"). *Id.* § 7412(d)(1).

On May 29, 2003, the EPA promulgated a NESHAP for the category of new and existing fabric and textile operations involved in "coating, printing, slashing, dyeing, and finishing." 68 Fed. Reg. 32,172 (May 29, 2003) (codified at 40 C.F.R. § 63.4280 et seq. (Part 63, Subpart OOOO)). Subpart OOOO further divided these operations into the subcategories of "coating and printing," "slashing," and "dyeing and finishing," setting different emission standards for each of these subcategories. 40 C.F.R. § 63.4281; *Id.* § 63.4290; *Id.*, Table 1. "Coating" is defined as

> "the application of a semi-liquid coating material to one or both sides of a textile web substrate. Once the coating material is dried (and cured, if necessary), it bonds with the textile to form a continuous solid film for decorative, protective, or functional purposes. Coating does not include finishing where the fiber is impregnated with a chemical or resin to impart certain properties, but a solid film is not formed."

*Id.* § 63.4371. "Finishing" is defined as

4

"the chemical treatment of a textile (e.g., with resins, softeners, stain resist or soil release agents, water repellants, flame retardants, antistatic agents, or hand builders) that improves the appearance and/or usefulness of the textile substrate."

*Id.*

TSG did not comment on the proposed rulemaking during the notice and comment period. Instead, TSG requested, by a letter dated June 23, 2005, that the EPA develop "an alternative MACT [maximum achievable control technology] standard for its textile operations." TSG asserted that the stringency of the finishing operation requirements, if applied to TSG, would likely require it to cease operation. TSG acknowledged that "[o]n its face, TSG's application of stain-repellent chemicals constitutes a 'finishing operation'" but stated that because TSG uses a chemical solvent rather than a water-based solution, it should not be subject to "finishing operation" emission standards. The EPA requested more information to make its determination, but TSG did not respond until June 30, 2006. In order to obtain the necessary information, the EPA contacted the Pennsylvania Department of Environmental Protection ("PDEP"), which faxed additional information regarding TSG's processes from its records of TSG's state permit application.

On November 8, 2006, based on the information it had gathered, the EPA issued an Applicability Determination. The EPA concluded that TSG's operations were "finishing operations" for purposes of Subpart OOOO. The EPA

5

determined that the TSG process impregnates textile fibers with a stain repellant without resulting in the formation of a solid film, so it is a "finishing," rather than a "coating" operation. The EPA also determined that the chemical solvent used by TSG was not merely a "carrier" of materials, but itself a "finishing material." The EPA stated that its decision was based on the current MACT standard and noted that TSG was permitted to petition the EPA to develop a different standard. TSG received the decision on November 16, 2006. This petition for review followed.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review a final action of the EPA under 42 U.S.C. § 7607(b)(1) ("A petition for review of . . . any . . . final action of the Administrator under this chapter . . . which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit."). To be a final action, the EPA's Applicability Determination must comply with the requirements of *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). "First, the action must mark the consummation of the agency's decisionmaking process-it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (internal citations and quotation marks omitted). As the parties concede, and as the facts detailed above indicate, the *Bennett* requirements have been met here. The EPA's action was the consummation of the decisionmaking process. It determined that TSG was a finishing operation and was therefore obligated to abide by a particular HAP control standard. Thus, the EPA's

6

Applicability Determination is a final agency action and we have jurisdiction to consider TSG's petition. *See Star Enter. v. Envtl. Prot. Agency*, 235 F.3d 139 (3d Cir. 2000).

We review an administrative agency's interpretation of its own regulations for plain error, deferring to the agency's construction of the regulation's language, unless it is plainly erroneous or inconsistent with the regulation. *Beazer E., Inc. v. Envtl. Prot. Agency*, 963 F.2d 603, 606-07 (3d Cir. 1992) (internal citations and quotation marks omitted).

> "While we apply the 'plainly erroneous' standard of review where the meaning of the words in the regulation is in doubt or subject to different interpretations, we are not at liberty to allow the agency to imply language that does not exist in the regulation. We acknowledge the complex nature of environmental statutes and regulations and the specialized knowledge necessary to construe them, and therefore, subject to these limitations, defer to the EPA's interpretations of its own regulations."

*Id.*; *see also Star Enter.*, 235 F.3d at 147.

## III. DISCUSSION

The crux of TSG's argument is that there are operational differences between its process for imbuing fabrics with stain-resistant qualities and those processes generally used by large, vertically integrated mills. TSG argues that despite these

7

differences, it has been unfairly and arbitrarily lumped into the "finishing operation" category because, in promulgating the regulation, the EPA primarily considered the processes used by the larger mills. More specifically, TSG asserts that because it uses a solvent-based process for treating its fabric, whereas most large mills generally use an aqueous-based process, TSG should not be considered a "finishing operation" under the regulations. In addition, TSG asserts, it more closely fits the definition of a "coating operation." TSG makes a number of arguments based on the language of the regulations and the intent of the EPA, and it finally argues that, in any case, the EPA did not have enough information to make the determination that it did.

### A.

TSG first argues it is not a "finishing operation" because TCE, the solvent that it uses in treating fabrics with anti-stain agents, is not a "finishing material" under the regulations. In doing so, TSG conflates two distinct issues: whether TSG's operation constitutes "finishing" as defined in Subpart OOOO, and whether TCE is a "finishing material." TSG makes no argument that its process, which indisputably involves treatment of fabrics with anti-stain agents, is not "finishing" as defined by the regulations. "Finishing" is defined as the "chemical treatment of a textile . . . that improves the appearance and/or usefulness of the textile substrate," and specifically includes "stain resist or soil release agents." 40 C.F.R. § 63.4371. Based on the plain language of this definition, we cannot conclude that the EPA clearly erred in determining that TSG's operations fit within the definition of "finishing."

8

Despite this, TSG proceeds to argue that TCE is not a "finishing material," and therefore that TSG's operation cannot be a "finishing operation." This argument is something of a non-sequitur, as there is no authority for the proposition that all materials used in a finishing operation must fall under the definition of finishing materials. Regardless, the EPA did not clearly err in its determination that TCE is, in fact, a finishing material.

> The regulations define finishing materials as
>
> > "the purchased substances (including auxiliaries added to the finish to improve the finishing process or the characteristics of the finished textile) that are applied individually or as mixtures to textile substrates to impart desired properties."

*Id.* TSG asserts that in its process the solvent acts only as a carrier for the application of other materials to the fabric, and technically the solvent itself has not been "applied" to the fabric as required by the regulation, because it later evaporates.

The EPA has not clearly erred in declining to construe the term "applied" so narrowly in this context. We therefore defer to the EPA's determination that under the plain language of the regulation, the solvent, as used in TSG's process, is a "finishing material." It is undisputed that the solvent is a "substance[]" that is part of a "mixture[]," and it is sprayed onto "textile substrates to impart desired properties," in this case, anti-stain properties. According to the Oxford English

9

Dictionary, to "apply" is "[t]o lay or spread (esp. a soft or liquid substance, as paint, ink, etc.) on to a surface." OED Online (2008), *available at* http://dictionary.oed.com. Merriam-Webster similarly defines it as "to lay or spread on [as in] varnish." Webster's Third New International Dictionary 110 (1981). Absent from these definitions is any requirement that to be "applied," a substance must adhere permanently to the substance to which it has been applied.

We agree with the EPA's determination that "[t]he solvent that TSG uses to dilute stain repellent finishes is a transfer agent that is added to the finish as an auxiliary to improve the finishing process, and therefore, is a finishing material." As the regulation states, the definition of finishing materials "includ[es] auxiliaries," so long as they are "added to the finish to improve the finishing process." 40 C.F.R. § 63.4371. TSG itself states in its initial letter to the EPA that its solvent mixtures "are used to improve the efficiency of the application process." As TSG has acknowledged that the solvent has been added as "carrier" to improve the process, the EPA has not clearly erred in determining that it meets the criteria for being considered an auxiliary. Therefore, the solvent used in TSG's operation is by definition a "finishing material."

## B.

TSG next argues that its operation should not have been classified as a "finishing operation" because it more closely fits the definition of a "coating operation." As stated previously, "coating" is defined as

10

"the application of a semi-liquid coating material to one or both sides of a textile web substrate. Once the coating material is dried (and cured, if necessary), it bonds with the textile to form a continuous solid film for decorative, protective, or functional purposes."

*Id.* It is not disputed that TSG's operation sprays the solvent mixture over one side of the fabric substrate in order to achieve a functional purpose, but this is not in itself sufficient to qualify it as a coating operation. In addition, to constitute "coating," a "continuous solid film" must be formed, and the process may not "impregnate" the fabric with chemicals. *See id.* ("Coating does not include finishing where the fiber is impregnated with a chemical or resin to impart certain properties, but a solid film is not formed.").

Based on the information provided by PDEP and TSG, the EPA determined that "the TSG process impregnates textile fibers with a stain repellent to impart stain repellent properties, and does not result in formation of a solid film." The EPA therefore concluded that TSG was not a coating operation, but rather a finishing operation. Although TSG now argues that its process does, in fact, result in a continuous solid film, and that this occurs "without impregnating the fiber," TSG provides no support in the record for this assertion. It relies solely on a fax from PDEP, which generally describes TSG's process, but does not make any reference to the formation of a continuous solid

11

film, coating, or finishing.[1]  In light of the foregoing, we conclude that the EPA has not clearly erred in determining that TSG is a finishing operation and not a coating operation.[2]

---

[1]TSG also cites an EPA Technical Support Document, relied upon by the EPA in the promulgation of Subpart OOOO, for the proposition that its operation is a coating operation.  This document is, however, not part of the administrative record in this case.  Even if we were to consider it, it does little to support TSG's contentions.  While it generally explains the sort of operations that the EPA considered designating as "coating" operations, it does not provide support for TSG's argument that its particular process forms a solid film or does not impregnate the fibers.  Because the final regulation is determinative of what constitutes "coating," the Technical Support Document does not place the EPA's Applicability Determination in doubt.

[2]Although TSG argues that it is a "coating operation," it repeatedly refers to itself as a "finishing operation" in its correspondence with the EPA.  TSG's letter of June 23, 2005, states that "TSG is requesting a the development of an alternate MACT standard for its textile finishing operations" and later, in describing its process, notes that "[w]hen finishing fabrics, TSG does not use a water-based . . . system."  While it is acknowledged that there is some overlap in the definitions of "coating" and "finishing," these statements further undermine TSG's attempt to characterize its operation as a "coating operation" for purposes of this appeal.

12

C.

In addition to its arguments that it does not qualify as a finishing operation based on the text of the regulation, TSG argues that its solvent-based processes are not finishing operations because finishing operations are aqueous-based processes, as conceived of by the EPA itself. In its Summary of Public Comments, the EPA states that "[s]lashing and dyeing and finishing operations are aqueous processes, and therefore, the cleaning materials and preparation activities used in these operations do not contain HAP." The EPA reiterates this statement in the preamble to Subpart OOOO. In addition, a Technical Support Document relied on by the EPA in promulgating Subpart OOOO notes that "[t]he coatings applied by facilities . . . can be classified as solvent-borne and water-borne, with the vast majority of the coatings applied being solvent-borne."[3]

TSG argues that these statements illustrate that in promulgating the regulations, the EPA based the control standard required for "finishing" and "coating" operations on the assumption that finishing operations were generally aqueous-based, and the that coating operations were generally solvent-based. TSG speculates that the EPA did not account for solvent-based finishing operations like TSG, which uses a "process unique in the textile finishing industry." In its Applicability Determination, the EPA acknowledges that

<hr />

[3]This document is not part of the administrative record. However, even if we were to consider it, it would not change the outcome here for the reasons explained below.

13

"[u]nlike the water-based systems typically used in the textile finishing industry, TSG uses a solvent-based system in which stain-repellent chemicals are diluted with solvent." However, for the reasons already stated, the EPA nonetheless determined that TSG was a "finishing operation" under the regulations.

TSG concludes that the EPA erred in its Applicability Determination because, in promulgating Subpart OOOO, the EPA intended that the more stringent finishing operation requirements would apply to aqueous-based finishing operations, not solvent-based operations such as TSG's. This argument is without merit. At no time does TSG argue that any of the terms used in the regulations are ambiguous, nor does it challenge the regulations themselves. Therefore, regardless of the EPA's purported intention to differentiate between solvent-based and aqueous-based operations, we are left with the plain language of the regulations as actually promulgated. The definitions of coating and finishing do not differentiate between, or even mention, aqueous- and solvent-based processes.

As stated previously, we exercise a deferential standard of review where an agency is interpreting the meaning of its own regulation, and will not disturb the agency's determination unless it is "plainly erroneous []or inconsistent with the regulation." *Beazer*, 963 F.2d at 606. Under this stringent standard of review, the agency's interpretation of the definitions of coating and finishing operations is neither plainly erroneous nor inconsistent with the regulation. TSG's argument that the EPA should read the regulations to imply a difference between aqueous- and solvent-based processes must then necessarily fail, as the regulations do not include this language. The EPA's

14

interpretation and application of Subpart OOOO must be based on the plain language of that regulation, not what it might have intended. *See Beazer*, 963 F.2d at 607 ("[W]e are not at liberty to allow the agency to imply language that does not exist in the regulation"); *Bethlehem Steel Corp. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 157, 161 (3d Cir. 1978) ("[T]he [agency] should not strain the plain and natural meaning of words in a standard to alleviate an unlikely and uncontemplated hazard. The responsibility to promulgate clear and unambiguous standards is upon the Secretary. The test is not what he might possibly have intended, but what he said.").

TSG's argument is further undermined by the fact that it refers to itself as a finishing operation in its initial letter to the EPA and never as a coating operation. TSG goes so far as to admit that "[o]n its face, TSG's application of stain-repellant chemicals constitutes a 'finishing' operation covered by the regulations." As the EPA suggests, TSG's most appropriate course of action would have been to submit a comment to the EPA during the notice and comment period after the regulation was proposed, noting that solvent-based finishers would have difficulty meeting the stringent emissions limitations in the proposed regulations, and advocating for a recognition of the distinction between solvent-based and aqueous-based operations in the regulations themselves.

In addition, as the EPA informed TSG in its Applicability Determination, it was "address[ing] the issue of applicability only," not TSG's request for an alternative MACT standard. As the EPA then advised TSG, TSG may petition the Office of Air Quality Planning and Standards, the office that initially

15

promulgated Subpart OOOO, to request that different standards be developed for solvent-based, as opposed to aqueous-based, finishing operations. *See* 5 U.S.C. § 553(e) ("Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule."). However, the question whether it is appropriate for the EPA to modify its rule and differentiate between solvent-based and aqueous-based finishing processes is not before us, and we will not speculate with respect to this question. The only question properly before us is whether the EPA has plainly erred in its interpretation and application of Subpart OOOO's plain language to TSG in its determination that TSG qualified as a finishing operation. For the reasons set forth above, we conclude that the determination was not plainly erroneous or inconsistent with the statute.

D.

TSG's final argument is that the EPA erred in issuing the Applicability Determination because the information it possessed was insufficient to support its conclusion that TSG's operation was a finishing operation. TSG argues that the EPA should have issued a determination that it did not have sufficient information, rather than determining that TSG was a "finishing operation." The linchpin of this argument is TSG's assertion that the EPA itself admitted that it did not have sufficient information to provide a response to TSG's August 3, 2005 letter reiterating its request for an alternative MACT. TSG points to the EPA's statement in the Applicability Determination:

16

"In response to your August 3, 2005 letter, we examined the applicability of Subpart OOOO to the TSG process. However, we did not feel that there was enough information included with your submittal to provide a response."

TSG's argument is flawed for a number of reasons. First, TSG has mischaracterized EPA's statements in the Applicability Determination. As the EPA explains, it declined to reach a determination when it concluded that there was insufficient information, and instead requested additional information. When that information was not forthcoming in a timely manner, the EPA obtained supplemental information from PDEP regarding the nature of TSG's processes. The EPA then reached its conclusion that TSG was a finishing operation "[b]ased on TSG's letter and the supplemental information provided by the state." As the rest of the Applicability Determination clearly states, although the EPA concluded that it did not have enough information to make a determination at the time that it received TSG's initial letter on August 3, 2005, it concluded that it had since gathered sufficient evidence to make a determination by the time it issued the Applicability Determination on November 8, 2006. Therefore, there is no merit to TSG's argument that the EPA admitted that it ultimately did not possess sufficient information to make a determination.

TSG next argues that the information that the EPA relied on is "not dispositive of the issue of whether TSG's fabric coating processes are finishing operations under Subpart OOOO." TSG's argument is conclusory. TSG does not explain why the PDEP information is not dispositive of the question. It

17

does not describe any of the ways in which the information that the EPA relied on was insufficient, nor does it indicate what sort of information TSG might have provided that would have resulted in a different determination.  To the contrary, the information on which the EPA relied reveals that TSG's process applies stain resistant chemicals to various fabrics, and therefore, as described previously, comports with the definition of finishing operation.  Accordingly, we conclude that the EPA had sufficient information to determine that TSG was a finishing operation.

## IV.  CONCLUSION

For the foregoing reasons, we conclude that the EPA did not clearly err in determining that TSG's operation constituted a finishing operation under Subpart OOOO, nor is the determination inconsistent with the regulations.  Therefore, we will deny the petition for review.[4]

---

[4]As noted in footnotes 2 and 3, *supra*, TSG has relied on certain documents not contained in the administrative record. Upon motion, TSG requested that these documents be included in the record on appeal.  As we have determined that TSG's reliance on these documents does not alter our holding in this case, we will deny this motion as moot.